## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN BEHAR, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>MORGAN STANLEY SMITH BARNEY, LLC.<br><br>    Defendant | **CLASS ACTION COMPLAINT**<br><br>**Civil Action No.  20-CV-6300**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Martin Behar ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following against Morgan Stanley Smith Barney, LLC ("Smith Barney" or "Defendant"), based upon his personal knowledge with respect to himself and his own acts, and upon information and belief, based upon his own investigation and the investigation of his counsel, as to all other matters, as follows:

## SUMMARY OF ACTION

1. This is a class action brought by Plaintiff on behalf of himself and all other persons harmed by the cyberattack and breach of consumers' personally identifiable information ("PII" or "Personal Information") that had been disclosed without the authorization of Plaintiff and the class by Defendant to unknown third parties (collectively, the " Data Breach" or "Breach").

2. On or about July 9, 2020, Morgan Stanley began notifying various state Attorneys General about multiple data breaches that occurred as early as 2016. Around the same time, Defendant mailed a *Notice of Data Breach* to current and former customers affected by the breaches. First, in 2016, Morgan Stanley closed two data centers and decommissioned the

computer equipment. Morgan Stanley hired a vendor to remove customers' data from the equipment. Subsequently, Morgan Stanly learned that the data was not fully "wiped" clean, and has admitted that "certain devices believed to have been wiped of all information still contained some unencrypted data." Now, according to Defendant, that equipment is missing.

3.      Second, in 2019, Morgan Stanley disconnected and replaced multiple computer servers in various branch locations. The old servers, which still contained customers' data, were thought to be encrypted, but Morgan Stanly subsequently learned that a "software flaw" on the servers left "previously deleted data" on the hard drives "in an unencrypted form." Now those servers are also missing (the 2016 and 2019 incidents will be collectively referred to herein as the "Data Breach").

4.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class Members' PII, Defendant assumed legal and equitable duties to those individuals. Defendant admits that the unencrypted PII that has "left [its] possession" included PII from the account holders and any "individual(s) associated with your account(s), including account names and numbers (at Morgan Stanley and any linked bank accounts), Social Security number, passport number, contact information, date of birth, asset value and holdings data."

5.      The missing equipment and servers contain everything unauthorized third-parties need to illegally use Morgan Stanley's current and former customers' PII to steal their identities and to make fraudulent purchases, among other things.

6.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiff's and Class Members' PII.

7.    Defendant disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to protect customers' data; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## PARTIES

8.    Plaintiff Martin Behar is a resident of Florida.  In or about 2013, Mr. Behar and his wife, Emily Behar, signed up for a brokerage account through Morgan Stanley's office in Boca Raton, Florida. The Behars supplied Morgan Stanley with their personal identifiable information, including but not limited to their names, address, date of birth and Social Security numbers. The brokerage account was terminated in or about February 2015. On or about July 11, 2020, Mr. and Mrs. Behar received a joint *Notice of Data Breach*, dated July 11, 2020, for the brokerage account.

9.     Defendant Morgan Stanley Smith Barney, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business headquartered at 1585 Broadway, New York, NY 10036.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this Action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of costs and interest.  At least one member of the putative Class is a citizen of a state different from that of the Morgan Stanley. There are more than 100 putative Class Members.

11.    This Court has personal jurisdiction over Morgan Stanley because it does business in this district.   Morgan Stanley provides account services throughout the United States, and, as such, has continuous and systematic contact with New York sufficient to provide it with the

minimum contacts necessary to satisfy the principles of fair play and substantial justice and requirements of New York's long arm statute.  Morgan Stanley has further committed a tortious act within this State. Morgan Stanley One has purposefully availed itself of the law of New York.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) because Morgan Stanley has committed a tortious act here, and a substantial part of the events, acts and omissions giving rise to Plaintiff's claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

13.     Morgan Stanley is a multinational investment bank and financial services company with offices in over 40 countries with more than 60,000 employees. The firm's clients include corporations, governments, institutions, and individuals. Morgan Stanley ranked No. 62 in the 2019 Fortune 500 list of the largest United States corporations by total revenue.

14.     Plaintiff and the Class Members, as current and former customers, relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Customers demand security to safeguard their PII.

15.     As a financial institution, Morgan Stanley has publicly stated that safeguarding its customers' information is essential to its mission.

16.     Defendant had a duty to adopt reasonable measures to protect Plaintiff' and Class Members' PII from involuntary disclosure to third parties. Morgan Stanley touts the secure nature of its system in its "Privacy Pledge":

> Morgan Stanley's long-standing commitment to safeguard the privacy of information our clients entrust to us is essential to our goal to be the world's first choice for financial services. Protecting the confidentiality and security of client information has always been an integral part of how we conduct our business worldwide.

We pledge to continue to ensure that our global business practices protect your privacy. (emphasis added)[1]

17.    Morgan Stanley also claims that the firm "use[s] personal information . . . to detect security incidents and protect against malicious, deceptive, fraudulent, or illegal activity."[2] The company further claims:

> To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We have policies governing the proper handling of customer information by personnel and requiring third parties that provide support to adhere to appropriate security standards with respect to such information.[3]

18.    Morgan Stanley collects and maintains PII from its individual account holders, including but not limited to: "Social Security number and income;" "investment experience and risk tolerance;" and "checking account number and wire transfer instructions."[4]

19.    Individual Morgan Stanley account holders may also supply the firm with personal identification (including passport numbers), mailing and billing addresses, telephone numbers, emails addresses, dates of birth, bank account numbers, and specific asset value and holdings information.

20.    Beginning on or about July 9, 2020, Morgan Stanley sent customers a Notice of Data Breach.[5] Morgan Stanley, identifying itself as "Morgan Stanley Smith Barney LLC. Member

---

[1] Morgan Stanley's *Privacy Pledge*, *available at*: https://www.morganstanley.com/privacy-pledge (last visited August 10, 2020).
[2] Morgan Stanley's *U.S. Privacy Policy and Notice*, *available at*: https://www.morganstanley.com/disclaimers/us-privacy-policy-and-notice.html (last visited August 10, 2020).
[3] Morgan Stanley's *U.S. Customer Privacy Notice*, *available at*: https://www.morganstanley.com/disclaimers/im-customer-privacy-notice.pdf (last visited August 10, 2020).
[4] *Id.*
[5] *See Notice of Data Breach*, filed July 10, 2020 with the California Attorney General, a true and correct copy of which is attached hereto as Exhibit 1 ("Ex. 1").

SIPC. / Morgan Stanley Private Bank, National Association. Member FDIC," informed the recipients of the notice that:

> In 2016, Morgan Stanley closed two data centers and decommissioned the computer equipment that processed client information in both locations. As is customary, we contracted with a vendor to remove the data from the devices. We subsequently learned that certain devices believed to have been wiped of all information still contained some unencrypted data. We have worked with outside technical experts to understand the facts and any potential risks [(the "Data Center Event")].[6]

21.     On or about July 10, 2020, Morgan Stanley sent data breach notifications to various state Attorneys General, including Iowa's Attorney General Tom Miller, signed by Gerard Brady, Morgan Stanley's Chief Information Security Officer. Brady reported the 2016 incident above and added information about another related breach that began in 2019:

> Separately, in 2019, Morgan Stanley disconnected and replaced certain computer servers (the "WAAS device") in local branch offices. Those servers had stored information on encrypted disks that may have included personal information. During a recent inventory, we were unable to locate a small number of those devices. The manufacturer subsequently informed us of a software flaw that could have resulted in small amounts of previously deleted data remaining on the disks in unencrypted form. We have worked with outside technical experts to understand the facts and any potential risks (the "WAAS Device Event").[7]

22.     Morgan Stanley admitted in the *Notice of Data Breach* and the letters to the Attorneys General that the hardware involved in both the 2016 Data Center Event and the 2019 WAAS Device Event "left our possession" at some point containing unencrypted information, and "it is possible that data associated with your account(s) could have remained on some of the devices when they left our possession."[8]

---

[6] Ex. 1, p.1.
[7] *See Letter from Morgan Stanley's Gerard Brady to Iowa's Attorney General Tom Miller*, dated July 10, 2020, a true and correct copy of which is attached hereto as Exhibit 2 ("Ex. 2").
[8] Ex. 2.

23.    Defendant further admitted that the unencrypted PII that left its "possession" included information from the account holder and any "individual(s) associated with your account(s), including account names and numbers (at Morgan Stanley and any linked bank accounts), Social Security number, passport number, contact information, date of birth, asset value and holdings data."[9]

24.    In response to the Data Breach, Morgan Stanley claims it has "instituted enhanced security procedures on your account(s), including continuous fraud monitoring and monitoring of information about malicious online activity and evidence of misuse of any Morgan Stanley data." It has also "taken steps to further strengthen controls aimed at reducing the risk that such an incident could occur in the future."[10]

25.    The equipment containing Plaintiff and Class Members' unencrypted information is missing, and is or may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the affected customers' approval. Unauthorized individuals can easily access Morgan Stanley's customers' unencrypted, unredacted information from these multiple devices, including Social Security numbers, passport numbers, addresses, telephone numbers, email addresses, checking account numbers, dates of birth, income, asset value and holding information.

26.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for current and former customers, causing Plaintiff and Class Members' PII to be exposed.

---

[9] Exs. 1, 2.
[10] Exs. 1, 2.

27.     Despite these representations and its duties as a financial institution, because of its negligence, Morgan Stanley failed to protect confidential customer information.

28.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII not being properly protected.

29.     As a result of the Data Breach notice, Mr. Behar spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach*, communicating with Morgan Stanley representatives on the toll-free number supplied in the notice, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

30.     Mr. Behar is very careful about sharing his PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

31.     Mr. Behar stores any and all documents containing his PII in a safe and secure location, and destroys any documents he receives in the mail that contain any of his PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

32.     Mr. Behar suffered actual injury and damages in paying money to Defendant for facilitating his joint brokerage account before the Data Breach; expenditures which he would not have made had Defendant disclosed that it lacked data security practices adequate to safeguard customers' PII.

33.     Mr. Behar suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Mr. Behar entrusted to Defendant for the

purpose of facilitating his joint brokerage account, which was compromised in and as a result of the Data Breach.

34.    Mr. Behar suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially her Social Security number.

35.    Mr. Behar has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his lost PII, especially his Social Security numbers being placed in the hands of unauthorized third-parties and possibly criminals.

36.    Mr. Behar has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

37.    Defendant could have prevented this Data Breach by properly encrypting the lost equipment and computer files containing PII on those lost hard drives. And, as Defendant claims it does, properly securing the "building" or location housing the equipment. Or Morgan Stanley could have destroyed the data, especially the decade old data from former customers like Plaintiff Behar.

38.    Defendant's negligence in safeguarding its customers' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing electronics. And Morgan Stanley,

specifically, had suffered breaches that involved stolen equipment containing customer PII only two years before this Data Breach.[11]

39.     It is well known and the subject of many media reports that PII is highly coveted and a frequent target of hackers. Despite the frequent public announcements of data breaches Morgan Stanley continued to use insufficient and inadequate system to protect the PII of Plaintiff and Class Members.

40.     Legitimate organizations and the criminal underground alike recognize the value in PII contained in a merchant's data systems; otherwise, they would not aggressively seek or pay for it.

41.     At all relevant times, Morgan Stanley knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its equipment and computer files containing PII was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

42.     Morgan Stanley was, or should have been, fully aware of the significant number of people who's PII it collected, and thus, the significant number of individuals who would be harmed if they did not keep this PII protected.

43.     Unfortunately, and as alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands of other third parties, Morgan

---

[11] Aruna Viswanatha, *Morgan Stanley Fined $1 Million for Client Data Breach,* The Wall Street Journal (2016), *available at*: https://www.wsj.com/articles/morgan-stanley-fined-1-million-for- client-data-breach-1465415374 (last visited August 10, 2020).

Stanley's approach to maintaining the privacy and security of the PII of Plaintiff and Class Members was lackadaisical, cavalier, reckless, or at the very least, negligent.

44.     The ramifications of Morgan Stanley's failure to keep Plaintiff's and Class Members' data secure are severe.

45.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[12]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[13]

46.     Personal and financial information is a valuable commodity. A cyber black-market exists in which criminals openly post stolen credit card numbers, Social Security numbers, and other personal information on a number of Internet websites. A credit card number trades for under $10 on the black market. Magnetic track data increases the price, and a card with full personal information such as an address, phone number, and email address (known in slang by those who hack as "fullz") are traded at around $25 per record.[14] As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[15]

47.     The consequences to affected consumers are significant as sensitive personal and financial information is exposed. It is further exacerbated when, compromised PII includes Social

---

[12] 17 C.F.R § 248.201 (2013).
[13] *Id*.
[14] See article entitled "Here's what your stolen identity goes for on the internet's black market", in "Quartz", 7/23/15 available online at https://qz.com/460482/heres-what-your-stolen-identity-goes-for-on-the-internets-black-market/ (last visited August 10, 2020).
[15] Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited August 10, 2020).

Security numbers which make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[16]  Each of these fraudulent activities is difficult to detect and may not be uncovered until the number has been used in a fraudulent transaction. Moreover, it is no easy task to change or cancel a stolen Social Security number. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number.[17]

48.    Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[18]

49.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit.  After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[19]

---

[16] The United States Government Accountability Office explained that theft involving social security numbers is the most insidious not only because it often takes time for the victim to become aware of the theft, but that as a result they will often face "substantial costs and inconveniences repairing damage to their credit records... [and their] good name." Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown, GAO (June 2007), available at https://www.gao.gov/new.items/d07737.pdf (the "GAO Report")(last visited August 10, 2020).

[17] Victims of Social Security Number Theft Find It 's Hard to Bounce Back, NPR, Brian Naylor, Feb. 9, 2015, available at http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has- millions-worrying-about-identity-theft (last visited August 10, 2020).

[18] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point (last visited August 10, 2020).

[19] Victims of Identity Theft, 2014 (November 13, 2017) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited August 10, 2020).

50.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII or PCD is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

51.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and the Class are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

52.     The PII of Plaintiff and Class Members is private and sensitive in nature and was left inadequately protected by Morgan Stanley.

53.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's decommissioned equipment, amounting to potentially millions of individuals' detailed, personal, finance-related information and thus, the significant number of individuals who would be harmed by the loss of decommissioned equipment containing unencrypted data.

54.     Morgan Stanley had the resources to prevent the Data Breach, but neglected to timely and adequately invest in data security, despite the growing number of well-publicized data breaches.

---

[20] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited August 10, 2020).

55.    To date, Defendant has offered its customers only two years of credit monitoring service through a single credit bureau, Experian. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

56.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers' PII.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff bring this class action pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of himself and all others similarly situated whose PII was compromised in the Data Breach announced by Morgan Stanley on or about July 9, 2020 and suffered damage or will suffer damage as a result of the Data Breach (the "Nationwide Class"). Excluded from the Class are Morgan Stanley, any subsidiary, affiliate, parent, division or subdivision of the Morgan Stanley, and any employee or agent of Morgan Stanley.

58.    In the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims under the laws of two individual States, and on behalf of separate State Subclasses, defined as follows:

> All persons residing in New York whose PII was compromised in the data breach announced by Morgan Stanley on or about July 9, 2020 (the "New York Subclass").

> All persons residing in Florida whose PII was compromised in the data breach announced by Morgan Stanley on or about July 9, 2020 (the "Florida Subclass").

59.    The Class and Subclasses consist of at least thousands of persons.  As such, its members are so numerous that joinder is impracticable.

60.    Questions of law and fact common to all members of the Class and Subclasses predominate, including:

      a.  whether Morgan Stanley acted negligently and/or wrongfully by failing to properly safeguard Plaintiff's and Class and Subclass  members' PII;

      b.  whether Morgan Stanley failed to give timely and adequate notice of the Breach;

      c.  whether Morgan Stanley's conduct violated the law; and

      d.  whether Plaintiff and the other Class and Subclass members have been damaged, and, if so, the relief that is appropriate.

61.    Plaintiff's claims, as described herein, are typical of the claims of other Class and respective Subclass members as Plaintiff's claims and those of other Class and Subclass members arise from the same set of facts regarding Morgan Stanley's failure to protect Plaintiff's and Class Members' private, Personal Information. Plaintiff maintain no interests antagonistic to the interests of other Class or Subclass members.

62.    Plaintiff is committed to the vigorous prosecution of this Action and has retained competent counsel experienced in the prosecution of class actions of this type.

63.    Accordingly, Plaintiff is an adequate representative of the Class and Subclasses and will fairly and adequately protect its interests.

64.    This class action is a fair and efficient method of adjudicating the claims of Plaintiff and Class and Subclass members for the following reasons:

      a.  common questions of law and fact predominate over any question affecting any individual Class Members;

b. the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thereby establishing incompatible standards of conduct for Morgan Stanley, or would allow the claims of some Class Members to adversely affect the claims of other Class Members, thereby affecting their ability to protect their interests; and

c. this forum is appropriate for litigation of this Action since a substantial portion of the transactions, acts, events, and omissions alleged herein occurred in this judicial district.

65.     Plaintiff anticipate no difficulty in the management of this litigation as a class action, as the Class and Subclasses are readily definable, and its prosecution as a class action will eliminate the possibility of repetitious litigation, while providing redress for claims that may be too small to support the expense of individual, complex litigation.

66.     For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**Negligence**
**(On behalf of all Classes)**

67.      Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

68.     Morgan Stanley owed a duty to Plaintiff and other Class Members to exercise reasonable care in obtaining, retaining, sharing, securing, safeguarding, and deleting their PII and protecting that information from being compromised, lost, stolen and misused by an unauthorized person.  They also owed Plaintiff and the Class a duty to timely disclose the Data Breach.

69.     This duty included, among other things, ensuring that Plaintiff's and Class Members' PII was adequately secured and protected, and to timely inform them, or any third party partner for whom Morgan Stanley provided the servers to.

70.     Morgan Stanley further owed a duty to Plaintiff and Class Members to implement processes in a timely manner that would detect a breach of its systems and prevent a mass loss of customers' PII.

71.     Morgan Stanley owed a duty to Plaintiff and Class Members to provide security consistent with industry standards, including ensuring that such private information was kept on secure systems.  Its acts in failing to secure this information has created this relationship.

72.     Plaintiff and Class Members, who provided Morgan Stanley with their personal, private information were the foreseeable and probable victims of a data breach of Morgan Stanley's information.

73.     Morgan Stanley was in a special relationship of trust with Plaintiff and Class Members by being entrusted with their PII.  By reason of this special relationship, Morgan Stanley had a duty of reasonable care, which it unlawfully breached.

74.     In the absence of negligence, Morgan Stanley would have known that its failure to properly erase all of customers' PII prior to selling its servers to a third party would cause damage to Plaintiff and other Class Members and that it had a duty to adequately protect such information.

75.     Plaintiff and Class Members entrusted their PII to Morgan Stanley based upon their belief and understanding that Morgan Stanley would safeguard such information and had mechanisms available to protect such information from a data breach.

17

76.     By negligently failing to take adequate steps to protect its customer's PII, which made sensitive customer information vulnerable to a data breach, Morgan Stanley acted without reasonable due care and thereby breached their duties to Plaintiff and Class Members.

77.     Morgan Stanley's breach of their duty of due care, proximately caused damage and will continue to cause damage to Plaintiff and Class Members.

78.     Morgan Stanley committed this tortious act in violation of its Privacy Policy.

**COUNT II**
**Negligence *Per Se***
**(On behalf of all Classes)**

79.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

80.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45, prohibits "unfair . . . practices in or affecting commerce" including, the act of failing to use reasonable measures to protect Personal Information.

81.     Morgan Stanley violated Section 5 of the FTC by failing to use reasonable measure to protect Personal Information and not complying with industry standards.

82.     Morgan Stanley's violation of Section 5 of the FTC Act constitute negligence per se.

83.     Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTC Act was intended to protect.

84.     The harm caused by Morgan Stanley constitutes the type of harm that the FTC Act was intended to guard against.  The FTC has pursued over fifty enforcement actions against businesses for causing similar harm by failing to employ reasonable data security measures and avoid unfair and deceptive practices.

85.      As a direct and proximate result of Morgan Stanley's negligence, Plaintiff and Class Members have been injured and are entitled to damages.

## COUNT III
### Breach of Implied Contract
### <u>(On behalf of all Classes)</u>

86.      Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

87.      In opening a brokerage account at Morgan Stanley, Plaintiff and the other members of the Class entered into an implied contract with Morgan Stanley, whereby Morgan Stanley became obligated to reasonably safeguard Plaintiff and the other Class Members' PII.

88.      Under the implied contract, Morgan Stanley was obligated to not only safeguard the PII, but also to provide Plaintiff and the other Class Members with prompt, truthful, and adequate notice of any security breach or unauthorized access of said information.

89.      Morgan Stanley breached the implied contract with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their PII.

90.      Morgan Stanley also breached its implied contract with Plaintiff and the other Class Members by failing to provide prompt, truthful, and adequate notice of the Data Breach and unauthorized access of their PII.

91.      Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to: (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud; (iv) the increased risk of identity theft; and (v) deprivation of the value of their PII, which is likely to be sold to cyber criminals on the dark web.

**COUNT IV**
**Violation of New York's Data Breach Laws –**
**Delayed Notification or N.Y. Gen. Bus. Law § 899-aa**
**(On behalf of the New York Subclass)**

92.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

93.     Section 899-aa (3) of the New York General Business Law requires any "person or business which maintains computerized data which includes private information which such person or business does not own shall notify the owner or licensee of the information of any breach of the security of the system immediately following discovery, if the private information was, or is reasonably believed to have been, acquired by a person without valid authorization."

94.     The security breach notification shall be directly provided to the affected persons by: (a) written notice; (b) electronic notice, provided that the person to whom notice is required has expressly consented to receiving said notice in electronic form and a log of each such notification is kept by the person or business who notifies affected persons in such form; provided further, however, that in no case shall any person or business require a person to consent to accepting said notice in said form as a condition of establishing any business relationship or engaging in any transaction; (c) telephone notification provided that a log of each such notification is kept by the person or business who notifies affected persons; or (d) substitute notice, if a business demonstrates to the state attorney general that the cost of providing notice would exceed two hundred fifty thousand dollars, or that the affected class of subject persons to be notified exceeds five hundred thousand, or such business does not have sufficient contact information. N.Y. Gen. Bus. Law § 899-a (5).

95.     The Data Breach described herein this Complaint constitutes a "breach of the security system" of Morgan Stanley.

96.     As alleged above, Morgan Stanley learned as early as 2016 of the Data Breach, yet unreasonably delayed informing Plaintiff and the New York Class Members about the Data Breach, affecting the confidential and non-public PII of Plaintiff and the New York Subclass members after Morgan Stanley knew the Data Breach had occurred.

97.     Morgan Stanley failed to disclose to Plaintiff and New York Subclass members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII when Morgan Stanley knew or reasonably believed such information had been compromised.

98.     Morgan Stanley's ongoing business interests gave Morgan Stanley incentive to conceal the Data Breach from the public to ensure continued revenue.

99.     Upon information and belief, no law enforcement agency instructed Morgan Stanley that notification to Plaintiff and the New York Subclass members would impede Morgan Stanley's investigation.

100.    As a result of Morgan Stanley's violation of New York law, Plaintiff and New York Subclass members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, including securing identity theft protection, or requesting a credit freeze. These measures would have prevented some of the damages the Plaintiff and Class Members suffered.

101.    As a result of Morgan Stanley's violation of New York law, Plaintiff and New York Subclass members have suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

**COUNT V**
**Violation of New York Consumer Law for Deceptive Acts and Practices and False**
**Advertising or New York Gen. Bus. Law § 349**
**(On Behalf of the New York Subclass)**

102.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

103.    Plaintiff and New York Subclass members seek all remedies available under New York law, including, but not limited to damages as well as equitable relief.

104.    Morgan Stanley's practices, acts, policies and course of conduct, as described herein, including making representations that they possessed sufficient security that complied with federal law to maintain the privacy of users' PII were intended to induce, and did induce, Plaintiff and the New York Subclass to allow their PII to be compromised.

105.    Plaintiff and the New York Subclass members never would have provided their PII if they had been told or knew that Morgan Stanley and third parties failed to maintain sufficient security to keep such PII from being compromised and taken by others, or that Morgan Stanley's failed to ensure that such information would be maintained in encrypted form.

106.    Morgan Stanley's practices, acts, policies and course of conduct are actionable  in that:

> a.    Morgan Stanley actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff and the New York Subclass at the time they provided PII that Morgan Stanley did not have sufficient security or mechanisms to protect such information; and

> b.    Morgan Stanley failed to give adequate warnings and notices, failed to take an adequate investigation, and failed to conduct due diligence of the third parties to whom it entrusted Subclass members PII regarding the defects and problems with

its system(s) of security systems that it maintained to protect Plaintiff's and the New York Subclass's PII. Morgan Stanley possessed prior knowledge of the inherent defects in its' systems and failed to address the same or to give adequate and timely warnings that there had been a Data Breach that compromised the PII of Subclass members.

107.    The aforementioned conduct is and was deceptive, false, and fraudulent and constitutes an unconscionable commercial practice in that Morgan Stanley has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the defective security system they maintained and failed to reveal the Data Breach timely and adequately.

108.    Members of the public were deceived by and relied upon Morgan Stanley's affirmative misrepresentations and failures to disclose.

109.    Such acts by Morgan Stanley are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer providing their PII to Morgan Stanley. Said deceptive acts and practices aforementioned are material. Such acts both occurred in New York and concerned New York residents and/or citizens was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law §§ 349 and 350.

110.    Morgan Stanley's wrongful conduct caused Plaintiff and the New York Subclass to suffer a consumer-related injury by causing them to incur substantial expense for protection from misuse of the PII by third parties and placing Plaintiff and the New York Subclass at serious risk for monetary damages.

111.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the New York Subclass seek statutory damages for each injury and violation which has occurred.

## COUNT VI
## Violation of Florida Deceptive and Unfair Trade Practices Act
## Fla. Stat. § 501.201, *et seq.*
## (On behalf of the Florida Subclass)

112.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 66.

113.     At all relevant times, Plaintiff and Florida Subclass members were "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat § 501.201 *et seq.* ("FDUTPA").

114.     Morgan Stanley is engaged in trade and commerce in Florida.

115.     Plaintiff and the Florida Subclass entrusted Morgan Stanley with their PII.

116.     As alleged in this Complaint, Morgan Stanley engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the FDUTPA:

a.   failure to maintain the security of Plaintiff and Florida Subclass' PII;

b.   failure to maintain adequate computer systems and data security practices to safeguard Plaintiff and Florida Subclass' PII;

c.   failure to disclose that its computer systems and data security practices were inadequate to safeguard PII;

d.   failing to detect the Data Breach in a timely fashion;

e.   continued acceptance of PII and storage of PII after Morgan Stanley knew or should have known of the security policies were not adequate; and

f.   allowing unauthorized persons to have access to Plaintiff and Florida Subclass members' PII.

117.    Morgan Stanley knew or should have known that its data security practices were inadequate to safeguard the PII of Plaintiff and Florida Subclass members, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

118.    As a direct and proximate result of Morgan Stanley' violation of FDUTPA, Plaintiff and the Florida Subclass suffered damages including, but not limited to:

    a.   unauthorized use of their PII;

    b.   possible theft of their PII;

    c.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.   damages arising from the inability to use their PII; and

    e.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, initiating and monitoring credit freezes, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach.

119.    As a direct result of Morgan Stanley' knowing violation of FDUTPA, Plaintiff and the Florida Subclass are entitled to damages as well as injunctive relief, including, but not limited to:

    a.   ordering that Morgan Stanley engaged third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Morgan Stanley's systems on

a periodic basis, and ordering Morgan Stanley to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Morgan Stanley audit, test, and train its security personnel regarding any new or modified procedures;

c. ordering that Morgan Stanley purges, deletes, and destroys in a reasonably secure manner PII not necessary for their provisions of services;

d. ordering that Morgan Stanley conducts regular database scanning and security checks;

e. ordering that Morgan Stanley routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

f. ordering Morgan Stanley to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps their customers must take to protect themselves.

120.    Plaintiff brings this action on behalf of himself and Florida Subclass members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff and Florida Subclass members and the public from Morgan Stanley's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Morgan Stanley's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

121.    Plaintiff and the Florida Subclass members seek actual damages under Fla. Stat. § 501.211(2) and all fees, costs, and expenses allowed by law, including attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 23 and Fla. Stat. §§ 501.2105 and 501.211, to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, request that the Court provide the following relief:

a.  Certifying this Action as a Class action and appointing Plaintiff as an adequate representative of the Class and the respective Subclasses, and his counsel as Class counsel;

b.  Entering judgment, including pre-judgment and post-judgment interest, in favor of Plaintiff and the Class and Subclasses and against Morgan Stanley;

c.  Awarding Plaintiff and Class and Subclass members appropriate relief, including actual and statutory damages, restitution, disgorgement and, where appropriate, injunctive relief requiring Morgan Stanley to take steps to ensure against a recurrence of the Data Breach by adopting and implementing reasonable data security measures, among other things;

d.  Awarding Plaintiff and Class and Subclass members attorney's fees, expenses, and costs of this Action; and

e.  Ordering such further and other relief as the Court deems necessary.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff, individually and on behalf of the putative Class, demand trial by jury on all issues so triable.

Dated:  August 11, 2020

By: _____

Melissa R. Emert
Gary S. Graifman
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel : (845) 356-2570
Fax: (954) 341-5531
memert@kgglaw.com
ggraifman@kgglaw.com

***Attorneys for Plaintiff and the Class***